CAMARGO CORREA METAIS, S.A., ET AL., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND AMERICAN ALLOYS INC., ET AL., DEFENDANT-INTERVENORS

Consolidated Court Nos. 91–09–00641–S and 91–09–00645–S

### OPINION

(Decided January 22, 1993)

*Roger & Wells, (Ryan Trainer)* for Camargo Correa Metais, S.A.
*Law Offices of Royal Daniel, III, (Royal Daniel, III, Jeri Beth Katz)*, for Campanhia Brassileira Carbureto de Calico *et al.*

*Lyn M. Schlitt,* General Counsel, United States International Trade Commission, *James A. Toupin,* Assistant General Counsel, United States International Trade Commission, *(Rhonda M. Hughes)* for The United States of America.

*Baker & Botts, (William D. Kramer)* for American Alloys, Inc., *et al.*

MUSGRAVE, *Judge:* Plaintiffs Companhia Brasileira Carbureto de Calcio ("CBCC"), Rima Eletrometalurgia S.A. ("RIMA") and Ligas de Aluminio S.A. ("LIASA") challenge the determination of the International Trade Commission ("ITC") that the United States silicon metal industry was materially injured by reason of imports from Brazil, published in *Silicon Metal From Brazil,* USITC Publication 2404 (July, 1991); *Determination, Silicon Metal From Brazil,* 56 Fed. Reg. 37,572 (August 7, 1991). Plaintiff Camargo Correa Metais, S.A. did not file a brief in this proceeding, which has been severed from Court No. 91–09–00641, the International Trade Administration ("ITA") portion of this case.

On April 17, 1991, the ITC published a notice in the Federal Register announcing a consolidated hearing regarding the subject imports from Brazil, Argentina and China, which it held on April 25, 1991. *Silicon Metal From Argentina and Brazil; Institution,* 56 Fed. Reg. 15,632. *Brief of ITC,* at 8. All parties who requested the opportunity were permitted to appear in person or by counsel. Representatives of all plaintiffs appeared. *Id.* at 8–9; *Administrative Record,* List 1, Doc. 226. The Brazilian respondents filed posthearing briefs. Plaintiffs did not object to the consolidated hearing.

The ITC reached its final determinations in the cases of China and Brazil at different times. The ITC unanimously determined on May 22, 1991, that an industry in the United States was materially injured by imports of silicon metal from China. *Silicon Metal From The People's Republic Of China,* 56 Fed. Reg. 27,033 (June 12, 1991); USITC Publication 2385 (*"Silicon Metal I"*). On July 15, 1991, the ITC unanimously determined that an industry in the United States was materially injured by imports of silicon metal from Brazil. *Determination, Silicon Metal From Brazil,* 56 Fed. Reg. 37,572 (August 7, 1991); *Silicon Metal From Brazil,* USITC Publication 2404 (*"Silicon Metal II"*).

*Silicon Metal II,* at 15, states,

> The Commission has previously determined that imports of silicon metal from Argentina, Brazil and China have caused material industry [*sic*] to the domestic industry * * *. Having received no new information during this final investigation which would require us to reach a contrary decision, we thus find material injury by reason of the subject imports.

Plaintiffs now argue that they "were denied their right to present written evidence" when the ITC decided the case against Brazil before plaintiffs submitted post-hearing briefs. *Brief of Plaintiffs,* at 12. However, it is clear from the determination that the ITC did consider plain-

tiffs' post-hearing submissions and found that they contained no new information:

> It is fundamental that Commission decisions in Title VII investigations, because they are based upon the particular record in a particular investigation, are *sui generis*. However, the record in this investigation is virtually identical to the record for the China determination, in which the Commission thoroughly discussed all relevant issues. Nor have the parties' submissions raised new issues.

*Silicon Metal II,* at 5. Plaintiffs do not point to anything in their post-hearing briefs that the ITC failed to consider. It is unnecessary to consider whether plaintiffs were denied any substantive right to present post-hearing briefs, because it is clear that the ITC did consider all of plaintiffs' post-hearing submissions before justifiably relying upon its earlier determination.

Plaintiffs also assert, without any citation to the record, that two of the four commissioners then in office were not present for some portion of the hearing. Plaintiffs give no indication which of the commissioners they are referring to. *Brief of Plaintiffs,* at 13.

A transcript of the hearing was prepared. *Administrative Record,* List 1, Document 227. "Absent some showing to the contrary, the Commission is presumed to have considered all evidence in the record." *Rhone Poulenc, S.A. v. United States,* 8 CIT 47, 55, 592 F. Supp. 1318, 1326 (1984). Plaintiffs' vague allegations are insufficient to rebut the presumption that the ITC considered all of the evidence before it.

Plaintiffs next challenge what they call the ITC's "heavy reliance" upon the dumping margin determination of the Department of Commerce in reaching its affirmative injury determination. *Brief of Plaintiffs,* at 12. However, the *Determination and View of the Commission* makes no mention whatever of the dumping margins. *Silicon Metal II,* at 1–20.

Only the *Additional Views of Acting Chairman Anne E. Brunsdale* refer to the dumping margins. Chairman Brunsdale states, "The most important new information in this case is the Commerce Department's final determination that the dumping margin for imports of silicon metal from Brazil is 91.06 percent, substantially higher than the preliminary dumping margin. This only reinforces my affirmative determination." *Silicon Metal II,* at 21. Plaintiffs somewhat inconsistently concede this: "One Commissioner relied heavily on the DOC antidumping margin while the other Commissioners failed to state the degree to which the DOC's margin was relevant to the final injury determination." *Brief of Plaintiffs,* at 8.

The Court declines plaintiffs' invitation to speculate upon hidden motives for the ITC's determination. The factors considered by the commission include the condition of the domestic industry, underselling of imports during the period of investigation, difficulty of the domestic industry in raising capital and modernizing. *Silicon Metal II,* at 10, 15. No mention is made of the dumping margins, even though the ITC may con-

sider evidence of dumping margins in making its injury determinations. *Copperweld Corp. v. United States,* 12 CIT 148, 155, 682 F. Supp. 552, 561 (1988).

Even Commissioner Brunsdale's additional views quoted above make it clear that the higher margins only reinforced her affirmative decision, and by implication were not the decisive factor. Nothing before the Court indicates that the ITC determination might have been different if the dumping margins had been lower.

Plaintiffs last argue that the ITC failed to consider or did not give adequate weight to evidence of poor business decisions by the domestic industry and evidence that the domestic industry voluntarily withdrew from the market. *Brief of Plaintiffs,* at 2, 5, 8, 10.

Plaintiffs argument that the ITC did not consider evidence of poor business decisions and voluntary withdrawal is refuted by the determination itself. As noted above, *Silicon Metal II,* at 5, expressly states that the ITC's rationale therein is substantially the same as in *Silicon Metal I.* In *Silicon Metal I,* Acting Chairman Brunsdale notes in her appended additional views, "Respondents claimed that the domestic silicon metal industry 'abandoned' its secondary aluminum customers, in order to reap greater profits both by selling to chemical producers and by producing ferrosilicon instead of silicon metal." *Silicon Metal I, Additional Views Of Acting Chairman Anne E. Brunsdale,* at 33.

Chairman Brunsdale responded to these claims as follows:

> even if the domestic industry did not find it profitable to sell to secondary aluminum producers in 1988 and in some sense did cause its customers to turn to the subject imports, that does not mean the domestic industry is not materially injured by dumped imports. Second, even if the industry made bad long-run decisions by not being loyal to its customers, that does not prevent it from attaining relief under the statute.

*Id* at 35.

Although Chairman Brunsdale's comments are not the views of the commission, Chairman Brunsdale clearly considered the evidence plaintiffs assert was ignored in reaching her decision to vote with the rest of the commissioners. While the *Views of the Commission* are silent with respect to voluntary withdrawal, the Court finds that the ITC did not fail to consider the evidence in the record.

With respect to the consideration given the evidence, the question for this Court is not whether the ITC "failed to give this information adequate weight in making its decision," *Brief of Plaintiffs,* at 3, but whether the decision is unsupported by substantial evidence on the record. 19 U.S.C. § 1516a(b)(1)(B) (1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.A.R. v. United States,* 14 CIT 409,412, 741 F. Supp. 936, 939 (1990).

In assessing whether the evidence is substantial, the Court must take into account whatever in the record fairly detracts from its weight. *Uni-*

*versal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456, 467 (1951). However, substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–620, 16 L. Ed. 2d 131, 141, 86 S.Ct. 1018, 1026 (1966).

In making its determination, the ITC is required to consider the volume of imports at issue, the effect of those imports on domestic prices for like products, the impact of such imports on domestic producers and such other economic factors as are relevant. 19 U.S.C. § 1677(7)(B) (1992). The ITC did so in this case, and the Court finds that its analysis is supported by substantial evidence in the record.

Plaintiffs submit as exhibit A to their brief what is apparently a portion of a transcript of the hearing before the commission. However, it is unauthenticated, unlabeled, and unexplained, excepting only plaintiffs' reference to it as "substantial evidence that the domestic producers of silicon metal voluntarily departed from the market." *Brief of Plaintiffs,* at 10, n.11. Nothing so much as indicates whose testimony is transcribed.

The motion before the Court is for judgment on the administrative record. *Rule 56.1.* Since nothing in plaintiffs' submissions demonstrates that plaintiffs' exhibit A is a part of the administrative record, the Court declines to consider the submission.

Plaintiffs refer to testimony, again without citation to the record, that they allege shows that the domestic industry was in its normal business cycle, that many petitioners made unwise business decisions and that financial statements of petitioners were susceptible to manipulation. *Brief of Plaintiffs,* at 10–11. The allegations are notably short on specifics.

Notwithstanding plaintiffs' failure to provide citations, evidence does exist in the record to support the contention that some segments of the domestic industry voluntarily withdrew from the market. *See,. e.g. Administrative Record,* List 1, Document 227, at 88 *et seq* (Testimony of Mr. Joseph Viland). However, as noted by Chairman Brunsdale, that evidence does not compel the conclusion that the domestic industry was not materially injured by reason of imported products.

The Court concludes that the ITC's determination is supported by substantial evidence on the record and is otherwise in accordance with law. Accordingly, the determination announced in *Silicon Metal From Brazil,* USITC Publication 2404 (July, 1991); 56 Fed. Reg. 37,572 (August 7, 1991) is affirmed, and the case is dismissed.